FILED
July 25, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ESAU ERNEST CHICAS ORTEGA,[1] §<br>§<br>Petitioner, §<br>§<br>v. §<br>§<br>KRISTI NOEM *et al.*, §<br>§<br>Respondents. § | CIVIL NO. SA-25-CV-689-OLG |

**O R D E R**

Pending before the Court is Petitioner's Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (the "Motion") (Dkt. No. 4), to which Respondents filed a response (the "Response") (Dkt. No. 8) and a supplemental response (the "Supplemental Response") (Dkt. No. 21). Petitioner did not file a reply. Shortly after Petitioner filed the Motion, the Court granted it in part, issued a limited temporary restraining order, and scheduled an evidentiary hearing on Petitioner's request for preliminary injunctive relief. *See* Dkt. Nos. 7; 13–14. On July 24, 2025, the Court held that hearing. This Order follows.

**I.   BACKGROUND**

Petitioner is a Salvadoran national who illegally entered the United States in 2017. On December 7, 2017, after expedited removal proceedings, the Department of Homeland Security ("DHS") issued a final order of removal requiring his return to El Salvador. *See* Dkt. No. 12-1 at 1. Before removal, Petitioner spoke with an asylum officer and raised a claim under the Convention Against Torture ("CAT"). Specifically, Petitioner claimed that, if returned to El Salvador, he would be tortured due to his sexual orientation. The asylum officer found these claims incredible and

---
[1] Petitioner's live pleading misspells his name. *See* Dkt. No. 12. The correct spelling appears to be "Esau Ernesto Chicas-Ortega." *E.g.*, Dkt. No. 12-1 at 1.

denied Petitioner's request for relief. Petitioner appealed that decision to an immigration judge ("IJ"), who was not persuaded. Thereafter, Immigration and Customs Enforcement ("ICE") executed the order of removal and deported Petitioner to El Salvador.

In 2019, Petitioner illegally reentered the United States. At that time, DHS detained Petitioner and reinstated his final order of removal. Petitioner raised another CAT claim, again arguing that he would be tortured if he were removed to El Salvador. This time, the asylum officer found his claim to be credible. As a result, Petitioner was placed in withholding-only proceedings. *See* Resp'ts' Ex. 3. On September 17, 2019, after Petitioner had been detained for more than ninety days, ICE released him under a strict set of conditions. *See* Dkt. No. 12-1 at 1–3. One of those conditions required Petitioner to report annually to an ICE check-in facility. *Id.* at 1. On October 3, 2023, Petitioner prevailed on his CAT claim, and the IJ deferred his removal to El Salvador. *See* Resp'ts' Ex. 3. On June 18, 2025, during his annual check-in, ICE detained Petitioner. On July 8, 2025, citing changed circumstances, ICE revoked Petitioner's supervised release. *See* Resp'ts' Ex. 4.

## II.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" requiring the movant to "unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted). To obtain such relief, the movant must demonstrate: "(1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) his substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (citation modified).

### III. ANALYSIS

Petitioner asserts two due process claims, one under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and another on the ground that he cannot be removed to any third country—i.e., any country not designated in his final order of removal—without receiving some measure of procedural due process. *See* Dkt. No. 12 at 4–6.[2] Before reaching these claims, however, the Court must address the applicability of a jurisdiction stripping statute invoked by Respondents.

**A.    Jurisdiction Stripping Statute**

"As always, jurisdiction first." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (citing *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022)). Relying upon 8 U.S.C. § 1252(g), Respondents assert that the Court lacks jurisdiction over this action. *See* Dkt. Nos. 8 at 2; 21 at 1–2. The Court disagrees.

The Immigration and Nationality Act includes a jurisdiction stripping provision. Specifically, § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." However, § 1252(g) is to be read narrowly and does not apply to "all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). Instead, it "applies only to three discrete actions that the Attorney General may take: her

---

[2] Petitioner repeatedly conflates deferral of removal with temporary protected status and, thus, erroneously concludes that he cannot be removed from the United States. *See* Dkt. No. 4 at 2, 5. Petitioner does not have temporary protected status. His removal to El Salvador was deferred under CAT. *See* Resp'ts' Ex. 3. Such a deferral does not preclude Petitioner's removal to "another country where he . . . is not likely to be tortured." *See* 8 C.F.R. §§ 1208.17(b)(2), 1240.12(d).

Furthermore, at the hearing, Petitioner argued for the first time that ICE improperly revoked his order of supervision. But Petitioner makes no reference to this claim in his live pleading. For this reason, it is not properly before the Court.

'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno*, 525 U.S. at 482 (emphasis in original) (quoting § 1252(g)).

Petitioner's due process claims do not directly challenge the decision to execute his final order of removal. Indeed, Petitioner admits that he is subject to a final order of removal and does not dispute that he may eventually be deported as a result. *See, e.g.*, Dkt. Nos. 4 at 5; 12 at 4. Petitioner's claims, meritorious or not, challenge his indefinite detention and forthcoming removal to a third country without notice and an opportunity to be heard on any challenge he may wish to raise. *See* Dkt. Nos. 4 at 3–4; 12 at 4–6. Both issues are collateral to the decision to execute his removal order and, thus, are not swept within § 1252(g)'s grasp. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

**B.**   *Zadvydas*

Petitioner asserts that, because he is entitled to additional process before being subjected to third-country removal, his deportation is "not reasonably foreseeable." Dkt. No. 4 at 3; *see* Dkt. No. 12 at 5. Respondents assert that any claim under *Zadvydas* is premature. *See* Dkt. No. 8 at 6. According to Respondents, Petitioner has only been detained for a matter of weeks, making his detention presumptively reasonable. *See id.* at 6–7. Even if this claim were timely, Respondents argue that Petitioner has not met his initial burden under *Zadvydas*. *Id.* at 8.

Once an alien is subject to a final order of removal, he must be removed within ninety days. *See* 8 U.S.C. § 1231(a)(1)(A). If the alien's removal is not processed within that time, he may be detained for a longer period or released subject to terms of supervision. *Id.* § 1231(a)(3), (6). In *Zadvydas*, the Supreme Court held that "an alien's post-removal-period detention" cannot exceed "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Still, the Supreme Court held that it is "presumptively constitutional

for an alien to be detained for six months after a final order of removal." *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (citing *Zadvydas*, 533 U.S. at 701).

At the hearing, Respondents clarified that Petitioner's *Zadvydas* claim is not yet ripe because the presumptively constitutional period restarts each time an alien is released and re-detained. But courts "broadly agree that the six-month period under *Zadvydas* does not reset when the government detains an alien . . . , releases him from detention, and then re-detains him again." *Diaz-Ortega v. Lund*, No. 19-cv-670, 2019 WL 6003485, at *7 n.6 (W.D. La. Oct. 15, 2019) (citation modified). Nevertheless, the Court agrees with Respondents that, even if Petitioner's claim were timely, he has not met his initial burden under *Zadvydas*.

Once the presumptively constitutional period expires, the alien bears the burden of demonstrating that "there is no significant likelihood of removal in the reasonably foreseeable future." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (quoting *Zadvydas*, 533 U.S. at 701). Petitioner has not done so here. As best the Court can tell, Petitioner believes that—because he has not been removed for several years, and because his removal to El Salvador is deferred—it is unlikely that he will be removed any time soon. *See* Dkt. Nos. 4 at 3–4; 12 at 5–6. But that assertion is not supported by the evidence in the record. During the last month alone, ICE has made significant progress identifying potential countries of removal and contacting those countries to facilitate Petitioner's deportation. That said, as the duration of confinement continues to grow, "what counts as the 'reasonably foreseeable future' . . . would have to shrink." *Zadvydas*, 533 U.S. at 701. If ICE is unable to secure Petitioner's removal in the near future, his *Zadvydas* claim will fare much better. Petitioner is free to raise this claim again at an appropriate juncture.

C.   **Procedural Due Process**

Petitioner argues that he is entitled to additional process before his removal to any third country. *See* Dkt. Nos. 4 at 2–3; 12 at 4–5. Under Article III's case-or-controversy requirement, a

5

case must be "ripe" for review—i.e., "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). In the present case, ICE has not yet designated any third country of removal and is still exploring several options. While Petitioner may ultimately be removed to a third country, that eventuality is far too speculative at this point.

For example, ICE may exhaust its list of potential countries of removal and release Petitioner under a new set of conditions. Likewise, if it becomes clear that removal to a third country is infeasible, DHS may file a motion with the appropriate immigration court "to schedule a hearing to consider whether deferral of removal should be terminated." 8 C.F.R. § 208.17(d)(1). Thereafter, ICE may remove Petitioner to El Salvador. All that to say, "this case is riddled with contingencies and speculation" rendering "judicial resolution . . . premature." *Trump*, 592 U.S. at 131, 134; *see Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *6 (S.D. Fla. July 8, 2025) ("ICE has not designated, nor even attempted to designate, a third country to which Grigorian may be removed, nor is there any suggestion that removal to any third country is imminent or even planned. Grigorian's argument is that he has been deprived of due process by a decision that has not yet been made in a proceeding that has not yet happened.").

### IV. CONCLUSION

For the foregoing reasons, the Motion (Dkt. No. 4) is **DENIED**.

**IT IS THEREFORE ORDERED** that the temporary restraining order is **DISSOLVED**.

**IT IS FURTHER ORDERED** that Petitioner's habeas petition is **DISMISSED WITHOUT PREJUDICE**.

This case is **CLOSED**.

**SIGNED** this 25th day of July, 2025.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE